THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PATRICK J. (alias " PATTY ") GRENNAN, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PATRICK J. GRENNAN, Defendant.

Third Department, October 1, 1954.

Nathaniel L. Goldstein, Attorney-General (Paul W. Williams and Arthur H. Christy of counsel), for plaintiff.

Mathias P. Poersch for defendant.

Per Curiam. In 1951 a Grand Jury was impaneled to serve at an Extraordinary Special and Trial Term of the Supreme Court, which was designated to be held in the County of Saratoga by order of the Governor, to inquire into the enforcement of the laws pertaining to gambling, as well as related matters of bribery and corruption. In the course of such inquiry the Grand Jury found two indictments against defendant Grennan. One, of August 22, 1951, charges conspiracy and violations of sections 970, 973 and 986 of the Penal Law. Another, of December 5, 1951, charges conspiracy to commit extortion and violations of sections 261, 850 and 851 of the Penal Law. Defendant was not apprehended until May 15, 1954, when he was found in Brooklyn, New York.

Proceeding under sections 344 and 346 of the Code of Criminal Procedure, as amended by chapter 889 of the Laws of 1953, the prosecution has moved this court for an order removing the trial of such indictments to some other county of the State on the ground that a fair and impartial trial cannot be had within the County of Saratoga. The motion is supported, solely, by the affidavit of Arthur H. Christy, a special assistant attorney-general, attached to the investigation staff.

Briefly, the claim that a fair and impartial trial cannot be had in Saratoga County rests on the assertion of general local hostility to the investigation, coupled with alleged biased and prejudicial news coverage on the part of the daily Saratogian, with a circulation of approximately 12,000, on the influence of James A. Leary, reputed Republican " boss " of Saratoga County, on the connection between said Leary and the defendant Grennan, and on fear and intimidation of witnesses and the difficulties encountered during the investigation in obtaining grand and trial juries.

So far as we know, this is the first occasion when the People have sought to exercise the right conferred by the amendments of 1953. While there have been instances in the past when the Supreme Court has asserted an inherent power to remove the

trial of an indictment from one county to another on the application of the prosecution in the absence of a statute directing otherwise, in 1945, the Court of Appeals denied the right of removal on application of the prosecution, holding that sections 344 and 355 of the Code of Criminal Procedure required that the trial of an indictment be before a jury of the county in which the indictment was found, unless removed therefrom to another county at the instance of the defendant. (*Matter of Murphy* v. *Supreme Court,* 294 N. Y. 440, 457, 458.)

The mandate of section 355 that " An issue of fact must be tried by a jury in the county in which the indictment was found, unless the action be removed, by order of the court, into another county, as provided in the second subdivision of section three hundred and forty-four ", remains unchanged, except that chapter 889 of the Laws of 1953 substituted the word " court " for the words " supreme court " and the word " in " for the word " of " following "jury ".

Thus, while equality of procedural right to apply for a change of the place of trial of an indictment is now accorded to both parties by statute, there remains a disparity between them as to the burden of proof to be met in obtaining such a change. A defendant faces no easy task in obtaining a change of venue. To do so he must submit clear evidence that he cannot obtain a fair trial by reason of bias, passion and prejudice against him in the community.

It is unquestioned that the People carry a heavier burden in attempting to subject a defendant to the onus of a trial in a distant forum and to defeat his declared right of trial in the county where the indictment was found. Such right is " not to be lightly disregarded and * * * only the most compelling reason could justify trial by a jury not drawn from the vicinage." (*Matter of Murphy* v. *Supreme Court, supra,* p. 457.)

Saratoga County has a population of 75,000, rural and urban. Saratoga Springs, with somewhat over 15,000 inhabitants, is its largest city. The people of the county are, undoubtedly, of varied interests and, obviously, are not of the same mind politically. Grant, arguendo, that the averments of the moving affidavit may justify an inference that some indefinite number of potential jurors may be infected with some one or all of the maladies of character upon which this motion is predicated. Still, the record here does not contain clear evidence of such an extensive infection of the body of the citizenry in the county as to compel the conclusion that the People cannot have a fair and impartial trial of the indictments in Saratoga County.

In reaching this conclusion we do not find it necessary to pass on the constitutional questions raised by defendant.

The motion should be denied.

FOSTER, P. J., BERGAN, COON, HALPERN and IMRIE, JJ., concur.